**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Fardi Perez-Canez,<br><br>    Defendant. | No. CR-18-00229-PHX-JJT<br><br>**ORDER** |

At issue is Defendant Fardi Dayan Perez-Canez's Motion to Dismiss Indictment with Prejudice (Doc. 36, Mot.), to which the Government filed a Response (Doc. 38, Resp.) and Defendant filed a Reply (Doc. 39, Reply). For the reasons that follow, the Court will grant the Motion to Dismiss Indictment, but without prejudice.

**I.     FACTS**

The Government charged Defendant by Complaint on January 25, 2018 with Importation of a Controlled Substance and Possession of a Controlled Substance with Intent to Distribute. (Doc. 1.) Defendant was released from custody on February 1, 2018 with conditions. (Doc. 9.) On February 20, 2018, the Government charged Defendant by Indictment with Importation of Methamphetamine, Possession with Intent to Distribute Methamphetamine, and Forfeiture Allegations. (Doc. 10.) On March 1, 2018, officials of the United States Department of Homeland Security's Immigration and Customs Enforcement ("ICE") took Defendant into custody and detained him for immigration proceedings. (Mot. at 3.) In September 2018, Defendant was deported. (Mot. at 3.)

Defendant now moves to dismiss the Indictment against him because he has been deported. (Mot. at 4–6.) Defendant argues that the Government abandoned its prosecution in favor of removal proceedings when it chose to deport him after he was released on pretrial supervision. (Mot. at 4–6.) Defendant also urges that, by deporting him, the Government has violated his right to counsel under the Sixth Amendment to the Constitution of the United States. (Mot. at 6–8.)

## II. ANALYSIS

Neither the Supreme Court nor the Court of Appeals for the Ninth Circuit has held that the government flatly, and in all circumstances, must choose between removing a person subject to a removal order or prosecuting them. The Ninth Circuit has held, however, that if the government, by removing a defendant from the United States "jeopardizes the district court's ability to try him, then the district court may craft an appropriate remedy." *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015). Therefore, the relevant inquiry is whether the Government, by deporting Defendant, has jeopardized the Court's ability to try him. The Court concludes it has based on the facts presented.

Defendant cites *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167 (D. Or. 2012), for the proposition that ICE must choose between removing or deporting a defendant and prosecuting him. (Mot. at p. 4.) In *Trujillo-Alvarez*, the court, pursuant to the Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, held a detention/release hearing and ordered the defendant released upon a finding that he did not present a danger to the community or a flight risk. Thereafter, ICE took the defendant into administrative custody and held him at an ICE detention center pending removal. ICE then deferred removal pending the criminal proceeding, and as the district court found, held the defendant thus "for the purpose of delivering him to trial." *Trujillo-Alvarez*, 900 F. Supp. 2d at 1178. The court in *Trujillo-Alvarez* found ICE's detention of the defendant violated the Bail Reform Act and the magistrate judge's release order issued pursuant to it and ordered ICE to release the defendant to the District of Oregon within a week or it would dismiss the criminal case.

*Trujillo-Alvarez* is inapposite, because it addresses enforcement of the Bail Reform Act. The *Trujillo-Alvarez* court prohibited the federal executive branch from countermanding decisions made under the Act through administrative detentions, as its holding makes clear:

> What neither ICE nor any other part of the Executive Branch may do [] is hold someone in detention for the purpose of securing his appearance at a criminal trial without satisfying the requirements of the [Bail Reform Act.]

*Id.* at 1179. The present case does not involve ICE taking Defendant into custody to hold him secure for trial. ICE removed Defendant from the United States pursuant to the removal order against him. And to the extent ICE held Defendant in custody pending that removal, it did so for the purpose of effecting the removal only—not to hold Defendant for appearance at trial. The Court thus finds *Trujillo-Alvarez* unpersuasive here.

Defendant also cites *United States v. Resendiz-Guevara*, 145 F. Supp. 3d 1128 (M.D. Fla. 2015), which presents facts more similar to the instant case and addresses the same legal issues as this case. In *Resendiz-Guevara*, the defendant was charged with reentry after deportation and sought release pending trial. A magistrate judge released him on a bond secured by his two mobile homes pursuant to the Bail Reform Act. On the day the defendant was released from Marshal Service custody, ICE took him into administrative custody and deported him to Mexico. The court in *Resendiz-Guevara* found that the government had abandoned its prosecution of the defendant by deporting him, and that by so doing it also violated the defendant's Constitutional right to counsel.

In so finding, the court noted that the geographical circumstances made the defendant's return, once removed, infeasible. Florida has no border with, or common ports of entry with, Mexico that could facilitate a defendant's parole or return for court proceedings as a practical matter. The court further noted that the government made no legal provisions for the defendant's return, such as parole or other methods to facilitate it. Applying the law of this circuit, then, in the circumstances of *Resendiz-Guevara*, the

government's action in deporting the defendant could certainly be found to have "jeopardized the district court's ability to try him." *See Santos-Flores*, 794 F.3d at 1091.

This Court previously considered the persuasiveness of *Resendiz-Guevara* in a similar case. *See United States v. Marco Antonio Solorzano-Velasquez*, No. CR-16-00624-PHX-JJT, Doc. 40. In *Solorzano-Velasquez*, the defendant was a Mexican citizen charged with reentry after removal. He was released on bond and immediately taken into immigration custody and deported. He moved to dismiss the charge against him and exonerate his bond, citing *Resendiz-Guevara*. The Court ultimately concluded that the circumstances of that case were meaningfully different from those in *Resendiz-Guevara* and denied the defendant's motion. First, the geographical proximity of Arizona and Mexico made paroling the defendant into Arizona more feasible than in *Resendiz-Guevara*. Next, the magistrate judge required that the defendant, if deported, "take every lawful action to facilitate [his] entry into the United States for the purpose of appearing." This requirement, combined with the government's communications to the defendant that it would parole him into the country for that precise purpose, led the Court to conclude that the government did not jeopardize its ability to try the defendant under *Santos-Flores*.

Despite nearly identical geographical circumstances, the Court finds the present case distinguishable from *Solorzano-Velasquez* on the remaining facts. In particular, the Court is not persuaded that the Government has made adequate provisions for Defendant's return to the United States. Although the Government stated in its Response that it would parole Defendant into Arizona (Resp. at 2–3), there is no demonstration that parole can be facilitated here because there is no showing of any steps to make possible even the communication necessary to coordinate such parole. Neither party claims to know where Defendant is located. (Resp. at 3; Reply at 2.) Moreover, more than one year has elapsed since Defendant was deported. Any future attempts by the Government to locate Defendant would be infeasible and untimely at this late juncture. Although Defendant's Release Order stated that he was to appear at further proceedings as required, maintain weekly contact with his attorney, and advise the Court and parties of changes in his contact information

(Doc. 9), it did not state that Defendant, if deported, was to facilitate his own entry back into the United States, like in *Solorzano-Velasquez*.[1]

Since neither party purports to know where Defendant is located and his release conditions do not require him to facilitate his attendance at further proceedings in this matter, the Court finds that ICE's actions have jeopardized the Court's ability to try Defendant and therefore dismisses the Indictment on those grounds. It does so, however, without prejudice. In reaching this conclusion, the Court recognizes and credits the Government's representation that it will parole Defendant into the United States for further proceedings as evidence of the absence of any bad faith. Moreover, there is no evidence before the Court that the Government has intentionally interfered with any parole attempts up to this point.

Defendant also argues that dismissal is appropriate because the Government has violated his Sixth Amendment right to counsel. (Mot. at 6–8.) Specifically, defense counsel alleges that Defendant was stranded without any possessions, does not have access to a telephone, and does not have his attorney's contact information. (Reply at 2–3.) These bare allegations, without more, put Defendant in no different a position than many domestically released defendants. The Court observes that in removing a defendant to Mexico, ICE creates impediments to his return for court proceedings. But the Court also notes that a defendant in that situation may still have adequate access to counsel that is qualitatively no different than any other out-of-custody defendant residing outside the state of Arizona. Had defense counsel provided Defendant with contact information, Defendant could reach his counsel as easily from Mexico as he could from Maine or Washington. Because Defendant has not substantiated his allegations of inadequate access to counsel, the Court will not find that his Sixth Amendment rights have been violated.

---

[1] The Release Order also stated that Defendant shall not agree to voluntary deportation if taken into immigration custody. (Doc. 9.) In July 2018, the Government filed a Motion to Re-Examine Defendant's Conditions of Release and Request for a Warrant after Defendant filed a Motion to Set Master Calendar Hearing for Voluntary Departure. (Doc. 29.) However, Defendant withdrew his petition and reinstated his application for cancellation of removal prior to the scheduled removal proceedings. (Doc. 31.) Because Defendant remedied this violation of his release conditions, the Court does not consider it here.

IT IS ORDERED granting in part and denying in part Defendant's Motion to Dismiss Indictment (Doc. 36) and dismissing the Indictment without prejudice.

Dated this 2nd day of March, 2020.

_____
Honorable John J. Tuchi
United States District Judge